IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

NANCY SLAYTON                                                                    PLAINTIFF

vs.                                                       CIVIL ACTION NO. 1:14cv0176-SAA

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY                                                  DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff Nancy Slayton seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of Social Security denying the application of period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act. Plaintiff filed her application on December 31, 2009, alleging disability beginning May 20, 2005. Docket 9, p. 246-249. Her claim was denied initially on April 20, 2010 (Docket 9, p. 136-39) and on reconsideration. *Id.* at 141-43. She filed a written request for hearing on November 5, 2010 (*id.* at 144) and was represented by counsel at the ten-minute hearing held on May 9, 2011. *Id.* at 43-56. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 6, 2011 (*id.* at 108-117), but the Appeals Council remanded the case to the ALJ for further review. *Id.* at 383-89. A new ALJ assigned to plaintiff's case held a hearing on April 17, 2013, [Docket 9, p. 57-103], and issued a second unfavorable opinion on May 29, 2013. Docket 9, p. 16. The Appeals Council denied plaintiff's request for review of he second decision on July 24, 2014. *Id.* at 9-13.

      Plaintiff timely filed this appeal from that decision, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this

opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on May 19, 1957 and is currently fifty-seven years old. Docket 9, p. 306. She obtained her GED in 1985, and her past relevant work was as a store manager and an office assistant. *Id.* at 93, 312, 391-93. In her application for benefits, plaintiff alleged disability due to OCD, anxiety, migraine headaches, allergies, degenerative disc disease, spurs on the bottom of her feet, depression, problems with varicose veins, acid reflux, arthritis, fibromyalgia and dry eyes. *Id.* at 331. The ALJ rejected her claims of disability, concluding that even though the plaintiff had severe impairments, plaintiff can perform her previous work as an office/medical assistant and store manager as well as other jobs in the national economy. Docket 9, p. 31.

Plaintiff claims that the ALJ erred because he reached an RFC that was contrary to the medical opinions of both her treating physician and the consulting examining physician, and he failed to find plaintiff disabled in light of testimony by a vocational expert [VE] which took into consideration limitations found by the treating and consulting physicians. The court finds that the ALJ improperly relied upon the opinion of a non-examining consulting physician instead of affording proper weight to the opinions of the treating and examining physicians. Finding further that an award of benefits is proper, the court remands the case for a determination of benefits.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step

2

sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she

---

[1] *See* 20 C.F.R. §§ 404.1520 (2012).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b) (2012).

[4] 20 C.F.R. §§ 404.1520(c) (2012).

[5] 20 C.F.R. §§ 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2011).

[6] 20 C.F.R. §§ 404.1520(e) (2012).

[7] 20 C.F.R §§ 404.1520(g)(2010).

cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir.

---

[8]*Muse*, 925 F.2d at 789.

[9]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## III.  DISCUSSION

Plaintiff argues that the ALJ improperly based his RFC on an opinion which was offered by an agency physician before the date plaintiff claims as her disability onset date in this case, along with the ALJ's own lay interpretation of the medical records.  In doing so, says plaintiff, the ALJ improperly discounted the opinions of her treating physician and the Commissioner's own examining physicians.  Docket 13.  The Commissioner counters that the ALJ's opinion that plaintiff can perform light work is supported by the record and that the treating and examining physicians' opinions are not supported by their own medical records.  Docket 14.

The RFC reached by the ALJ in this case was based upon records from Dr. Naim Rahman, a consulting internal medicine physician who examined plaintiff during an earlier application for benefits – one  month before her onset date for the current application, over four years before her current application for benefits and before many of her medical records had been made a part of the record.  Docket 9, p. 513-17.  Because her previous application for benefits was for back pain, anxiety and depression, Dr. Rahman was not examining plaintiff for the additional impairments alleged in the current application.  Docket 9, p. 514.  Dr. Rahman simply examined plaintiff, but did not provide either physical or mental limitations.  In fact, the record does not appear to contain any opinion from any physician concerning *physical* limitations despite the limitations contained in the ALJ's RFC.

In contrast, both plaintiff's treating physician and Dr. James Lane, an agency examining physician, found plaintiff had functional limitations that the ALJ elected not to credit.  Dr. Lane first examined plaintiff on October 9, 2001 and issued a Psychological and Comprehensive

Mental Status Evaluation report in conjunction with a prior application for benefits. Docket 9, p. 425-29. He again examined her on April 26, 2005, before her date last insured. His examination was also before her date of onset in the current application for benefits, just as was Dr. Rahman's examination, whose entire opinion the ALJ granted significant weight. Docket 520-24. In both of Dr. Lane's examinations, he concluded that plaintiff's ability to maintain concentration and attention was limited and that she "would have problems interacting appropriately with co-workers and accepting supervision." Docket 9, p. 429, 523. The ALJ did note Dr. Lane's findings, but he "decline[d] to accord weight" to the opinion regarding plaintiff's difficulty maintaining concentration and attention for more than one or two hours and her problems interacting appropriately with co-workers and accepting supervision; despite rejecting those opinions, the ALJ did not cite to any medical evidence or other opinion that contradicted Dr. Lane's opinion. Docket 9, p. 27.

Similarly, Dr. Robert Hardy, plaintiff's treating psychiatrist at Community Counseling Services, opined that plaintiff's "low energy, poor concentration, and inability to withstand stress without anxiety symptoms make her a poor choice for employment." Docket 9, p. 137. On November 3, 2010, Dr. Hardy completed a Mental Impairment Questionnaire ("MIQ") based upon his own treatment of plaintiff for 2½ years and her treatment by other physicians at Community Counseling Services over a span of at least ten years. Docket 9, p. 972-977. Dr. Hardy opined that plaintiff's mental impairments resulted in moderate restrictions of daily living, marked difficulties in maintaining social functioning, marked deficiencies of concentration, persistence or pace, and that she had experienced four or more episodes of decompensation with at least three occurring "within one year or an average of once every for months, each lasting for

6

at least 2 weeks . . . ." Docket 9, p. 972-77. He further opined that plaintiff's abilities were "poor or none" in the areas of maintaining attention for two hour segments and dealing with normal work stresses. *Id.* Despite Dr. Hardy's opinions as to plaintiff's abilities or lack thereof, the ALJ gave his opinions only minimal weight, explaining that Dr. Hardy "lacks any basis in personal treatment of [plaintiff] for his assessments and conclusions regarding the period prior to the date last insured." Docket 9, p. 31.

The Commissioner asserts that the ALJ's weight assignment to Dr. Hardy's opinion was proper because Dr. Hardy had only treated plaintiff for 2½ years and was not treating her at the time of her onset date or the date last insured. Docket 14, p. 11-12. However, neither the ALJ nor the Commissioner seem to acknowledge exactly how clinics such as Community Counseling Services work. Community Counseling Services is a public non-profit agency partially funded by the Mississippi State Department of Mental Health and serves as a mechanism by which to provide ongoing affordable behavioral health services to Mississippians who would otherwise not be able to afford mental health treatment. It is not uncommon that a patient at Community Counseling Services and other community mental health treatment centers might be treated by multiple physicians, either because of the turnover or because of the sheer number of patients the physicians are able to see. The fact that Dr. Hardy only treated plaintiff for 2½ years during the 10-year period she was treated at CCS and provided an opinion as to her care by other physicians at Community Counseling Services is not a reason to discount Dr. Hardy's opinion. It appears that the ALJ used this as an excuse to pick and choose the opinions upon which he wanted to rely. The ALJ's election to discount the opinions of both Drs. Lane and Hardy because they either pre-dated her onset date or post-dated her date last insured, but nevertheless give

7

significant weight to the opinion of Dr. Rahman who saw plaintiff before her onset date is contradictory itself. These inconsistent and, in the court's opinion, at best weak justifications render his opinion unsupported by substantial evidence.

Without doubt the responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), but in making this determination he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). An ALJ may not establish physical limitations or the lack of such limitations without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F.3d at 35.

At the hearing, the ALJ posed three hypothetical questions to the VE, first asking her to assume that plaintiff could, with physical limitations largely within the sedentary range, "maintain attention and concentration for two hour periods within an eight hour workday. She can interact adequately with others. She can adapt at a basic level and she can complete a normal workweek without excessive interruption from psychologically based symptoms. . . ." Docket 9, p. 95. In response to this hypothetical, the VE testified that plaintiff would not be a candidate for her previous work or other work in the national economy. The second hypothetical allowed exertional limitations at the light level, including restriction of twenty pounds

occasionally and ten pounds frequently, but, more importantly, plaintiff "could not maintain attention and concentration for two hour periods within the eight hour workday. She could not interact adequately with supervisors or coworkers." Docket 9, p. 96. To this hypothetical, the VE responded that plaintiff would not be a candidate for her past work or any other jobs in the national economy. *Id.* The third hypothetical asked the VE to assume that plaintiff maintained the same physical abilities as hypothetical two, but with the mental restrictions of hypothetical one. Docket 9, p. 97. In response to the third hypothetical, the VE testified that plaintiff could perform the job of an office/medical assistant, as well as her past jobs as an antique shop manager and shoe shop manager as they are performed in the national economy. Docket 9, p. 97-98. Based upon hypothetical three, the VE further testified that plaintiff could perform the job of a ward clerk or a customer service representative as they are performed in the national economy. *Id.* at 99.

Following the ALJ's questions to the VE, plaintiff's attorney posed his own hypothetical to the VE that contained limitations placed on plaintiff by Dr. Lane. In this hypothetical, plaintiff would not be capable of maintaining concentration and attention for more than three to four hours out of an eight-hour work day, has difficulty interacting appropriately with co-workers and difficulty accepting supervision. In response to this hypothetical, the VE testified that plaintiff would not be able to perform her previous jobs or any other jobs. Docket 9, p. 101.

The record demonstrates, without medical contradiction, that plaintiff has limitations upon her ability to maintain concentration and attention and her ability to work with others and accept supervision. "An ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir.

9

1995).  This appears to be exactly what the ALJ did in this case.  In direct contradiction to both the medical evidence in the record and applicable case law, the ALJ ignored physician limitations that were clearly supported by medical proof, established an RFC which is not based upon medical evidence, then accepted the VE's testimony as to plaintiff's ability to work which was based upon the unsupported RFC.

The Fifth Circuit has ruled that a VE's testimony based upon a defective hypothetical question cannot constitute substantial evidence of a non-disability.  *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001).  Therefore, the court finds that the ALJ did not satisfy his affirmative duty to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  In fact, the hypothetical posed by plaintiff's counsel, which *is* supported by the record, mandates a finding that plaintiff is in fact disabled because she cannot perform her past work, and there are not jobs either in Mississippi or the national economy that she could perform.  The court holds that the ALJ's decision was not supported by substantial evidence and should be vacated.

## IV.  DETERMINATION OF BENEFITS

In determining whether to reverse the Commissioner's final decision and remand for further consideration or to grant benefits without further administrative review, the court must look to the completeness of the record, the weight of the evidence in favor of the plaintiff, the harm to the plaintiff that further delay might cause, and the effect of a remand delaying the ultimate receipt of benefits by a deserving plaintiff.  SOCIAL SECURITY LAW & PRACTICE, §55.77, p. 129.   In this case, the plaintiff has been very patient.  She has been seeking benefits through the administrative processes for over five years.  The evidence in this case is clear.  Both

the plaintiff's treating physician and the agency examiner concluded that plaintiff has severe mental limitations. Additionally, according to the VE, there are no jobs in Mississippi or the national economy that plaintiff could perform due to these limitations, and, as a result, plaintiff is presumed to be disabled. The court holds that because the evidence is conclusive, an award of benefits at this stage would be in the best interests of the plaintiff's health and welfare and will avoid further undue delay which would result upon remand for additional review. This case is remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act.

## V. PLAINTIFF'S REMAINING ARGUMENTS

Because the court has determined that the plaintiff is disabled under the Social Security Act, and this action is being remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act, the court need not address the merits of the plaintiff's remaining arguments at this time.

## VI. CONCLUSION

For the foregoing reasons, the court finds that the decision of the ALJ was not supported by substantial evidence, that a substantial number of jobs do not exist in which plaintiff can perform due to her limitations, and plaintiff is entitled to benefits under the Social Security Act. This case is remanded for the sole purpose of determining the amount of benefits to be awarded. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 26th day of May, 2015.

　/s/ S. Allan Alexander　　　　　　
UNITED STATES MAGISTRATE JUDGE